IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **INSURANCE COMPANY OF NORTH AMERICA,** | * * * | |
| Plaintiff | * * | |
| v. | * * | Case No. RWT 04-CV-2805 |
| **WILLIAM B. SULLIVAN, Trustee for KORA & WILLIAMS CORP.,** | * * * * | |
| Defendant | * | |

## MEMORANDUM OPINION

### BACKGROUND

On May 8, 1984, the District of Columbia ("D.C.") awarded a contract to Kora & Williams (the "Debtor" or "K & W") to build the Union Station Bus/Parking Garage and Rail Access Facilities (the "Union Station Contract"). The price of the contract was fixed at $24,850,000.00. Insurance Company of North America ("INA") was K & W's surety on this and other unrelated contracts. K & W and INA had previously entered into an Indemnity Agreement in 1981 that required K & W to indemnify INA for certain costs in relation to any bonds on which INA was the surety.

On June 19, 1987, D.C. terminated K & W under the Union Station Contract for an alleged default. The default termination was appealed to the Department of Administrative Services and then to the District of Columbia Contract Appeals Board ("D.C. CAB"). Pursuant to an agreement dated November 16, 1987 between INA and D.C. ("D.C. Agreement"), INA, as surety for K & W, made provisional payment under its performance bond whereby it tendered $12,869,460.00 to D.C.

1

and received a complete release of its obligations under the performance bond. The tender was subject to a full reservation of rights by INA. Thus, if the D.C. CAB determined that the termination of the Union Station Contract was found to be made for the convenience of D.C., i.e. the termination did not occur because K & W had defaulted, then INA was entitled to the return of the tendered sum with interest. In January 1988, INA and K & W (which had separate but related claims against the D.C. government arising out of its termination of the Union Station Contract) jointly hired the law firm of Watt, Tieder, Killian & Hoffar ("Watt, Tieder"), now Watt, Tieder, Hoffar & Fitzgerald LLP, to litigate the appeal against D.C. in the D.C. CAB and, eventually, the District of Columbia Court of Appeals ("D.C. Court of Appeals").

K & W was the subject of a Chapter 7 involuntary petition filed on May 16, 1988. K & W consented to an order for relief on July 7, 1988 and moved to convert the case to a Chapter 11 case, which occurred on July 18, 1988. On January 6, 1989, however, the case was converted back to a Chapter 7 case. William B. Sullivan ("Trustee") was then appointed "interim" trustee and continues to this day to serve as such. INA timely filed proofs of claim in the bankruptcy proceedings on November 23, 1988 and on April 28, 1989.

On August 9, 1989, the Trustee and INA entered into an Agreement ("1989 Bankruptcy Agreement") to facilitate the Union Station Contract litigation. See INA App. at Doc. 1, Ex. B. The 1989 Bankruptcy Agreement explained, inter alia, that the claims of K & W and INA consist of entitlement (liability) and quantum (damages). Id. at 3. The Bankruptcy Agreement further clarified that "the issues of proof involved with entitlement are essentially the same for INA and the Trustee, while the issues and proof involved with quantum are different." Id. The Bankruptcy Court approved the 1989 Bankruptcy Agreement on September 11, 1989. INA App. at Doc. 1, Ex. C. The

2

Agreement also provided that Watt, Tieder (INA's counsel) would be the primary counsel in the Union Station Contract litigation provided that the Trustee retained control over the litigation of those claims. Significantly, the Bankruptcy Agreement stated that

> INA has an ownership interest in any and all funds recovered from the D.C. Government as a result of a judgment or settlement of the Union Station Claims, up to and including the aggregate amount of all Bond Payments made by INA in connection with the Union Station Project, *the aggregate amount of all reasonable fees, costs and expenses incurred by INA in connection with the preparation and prosecution of the Union Station Claims*, and/or the Union Station Project generally, and interest thereon.

Id. at 6 (emphasis added). The 1989 Bankruptcy Agreement further delineated the relationship among INA; Watt, Tieder; and the Trustee. For purposes of this appeal, the only other relevant portions of the 1989 Bankruptcy Agreement are those that memorialize that Watt, Tieder represented INA, not the Trustee (who was represented by Arent, Fox, Kintner, Plotkin & Kahn), and that INA would direct Watt, Tieder's prosecution of the appeal, pay Watt, Tieder's fees, and have the sole and exclusive option to terminate Watt, Tieder. Id. at 7.

On May 12, 1993, Watt, Tieder, the Trustee, and INA entered into an Agreement ("Tripartite Agreement"). See INA App. at Doc. 2, Ex. C. The Tripartite Agreement recognized that, as of that date, INA had paid approximately $3,000,000 in legal fees to Watt, Tieder and approximately $675,000 to various experts and consultants pursuant to the prosecution of the D.C. CAB case. Id. Because INA had made such substantial disbursements to Watt, Tieder, the parties agreed that Watt, Tieder would continue to prosecute the appeal but that its fees would be limited to $617,000, with an additional $205,000 to be paid if the Trustee and INA prevailed in the litigation and were awarded $20 million or more (and a lesser percentage of $205,000 if the award was less than $20 million). The Tripartite Agreement also provided that the Trustee would pay a 25% contingent fee

on any recovery under its separate quantum claim.  See id.  With regard to INA's right to recover any monies from the Trustee, the Tripartite Agreement provided that "INA agrees that it has no claim to any sum recovered by the Trustee from the D.C. Government, whether by judgment or settlement, in connection with the Trustee's Quantum claim in the D.C. CAB Case, *except as an unsecured creditor in Kora & Williams Corporation's bankruptcy case*."  Id. at ¶ 4(a) (emphasis added).  The Bankruptcy Court approved the Tripartite Agreement on August 11, 1993.

The D.C. CAB issued an interim entitlement (liability) opinion on May 7, 1994, reversing the default termination, and finding in favor of the Trustee and K & W.  The quantum hearing took place from November 29, 1994 to December 15, 1994.  On September 30, 1996, the D.C. CAB issued its quantum (damages) opinion awarding INA and K & W the sum of $12,410,991.00 in damages plus interest at four percent per annum.  D.C. then appealed to the D.C. Court of Appeals, which affirmed the decision of the D.C. CAB on December 30, 1999, holding that D.C.'s default termination was unlawful and the termination was therefore converted to a termination for the convenience of the District of Columbia.  See District of Columbia v. Kora & Williams Corp., 743 A.2d 682 (D.C. 1999).  The D.C. Court of Appeals did not alter D.C. CAB's quantum award.

In July 2000, D.C. paid $18,497,310.76 to the Debtor's estate.  INA claimed ownership of part of that payment and, after negotiations, the parties entered into an agreement dated December 7, 2001.  See  INA App. Doc. 2, Ex. D ("2001 Agreement").  Pursuant to the 2001 Agreement, the Trustee paid $4,591,893 from the funds received from D.C. as "full and final satisfaction of INA's Ownership Claim."  Id.  As another aspect of the 2001 Agreement, INA agreed to file an amended proof of claim in K & W's bankruptcy case "limited to its non-contingent, fully liquidated general unsecured claim and limited in total amount to $10,763,826.64."  Id.  The Trustee did, however,

4

reserve all rights to object to the amended proof of claim.  Id. at ¶ 4.  The Bankruptcy Court approved the 2001 agreement on December 21, 2001.  Trustee's App. Doc. 2, Ex. D.

INA filed its amended proof of claim on December 20, 2001 (Claim No. 80), seeking, inter alia, reimbursement for the legal fees and expenses incurred by INA in prosecuting the Union Station Contract litigation.  The Trustee filed objections to Claim No. 80, asserting two bases for its position that INA should not recover attorney's fees: 1) as a matter of bankruptcy law, under 11 U.S.C. § 506(b), these fees are not recoverable; and 2) as a matter of contract law, the Indemnity Agreement between the Debtor and INA, see INA App. at Doc. 1, Ex. A, does not contemplate the reimbursement of legal fees and expenses incurred by INA in prosecuting the Union Station Contract litigation and appeal.

In a Memorandum of Decision filed on June 4, 2004, the Bankruptcy Court agreed with the Trustee that INA could not recover legal fees incurred in prosecuting the Union Station Contract under both bankruptcy law and the Indemnity Agreement.  See INA App. at Doc. 8.  On July 16, 2004, the Bankruptcy Court issued an Order Granting Trustee's Motion for Partial Summary Judgment and Denying Motion of Insurance Company of America for Partial Summary Judgment. INA App. at Doc. 9.  The Order specifically held that INA's claim was disallowed to the extent that it sought reimbursement of legal fees and expenses (including, but not limited to, attorney's fees and expenses, expert witness fees and expenses, consultant fees and expenses, deposition expenses and court costs) incurred by INA after May 16, 1988 and incurred by INA in prosecuting the appeal of the default termination of K & W on the Union Station project.  Id.  Because the parties had filed Motions for *Partial* Summary Judgment, the Bankruptcy Court, upon request by the parties, certified on November 3, 2004, that this was a controlling question of law as to which there exists a

5

substantial ground for difference of opinion and further determined that the immediate appeal of its Order would materially advance the ultimate termination of the bankruptcy case. The parties subsequently filed their briefs (Ira Steinberg, creditor and equity interest holder in the estate of K & W, adopted the Trustee's brief), and the Court having heard argument of counsel, the appeal is now ripe for decision.

## DISCUSSION

On appeal from a decision of a bankruptcy court, a district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. See Canal Corp. v. Finnman, 960 F.2d 396, 399 (4th Cir. 1992). The fundamental issues on appeal are the interpretation of provisions of the bankruptcy code and the interpretation of an agreement. Neither party disputes that both issues raise questions of law; thus, de novo review is appropriate. See In re Merry-Go-Round Enters., Inc., 180 F.3d 149, 154 (4th Cir. 1999) (review of an interpretation of the bankruptcy code is de novo); Liberty Mutual Ins. Co. v. Pine Bluff Sand & Gravel Co., 89 F.3d 243, 246 (5th Cir. 1996) ("[D]e novo review of legal questions includes the interpretation and application of indemnity agreements.").

The dispute in this case is easy to comprehend: INA wants K & W to pay its attorney's fees and litigation costs incurred while prosecuting the Union Station Contract litigation against D.C., which resulted in a victory for both K & W and INA. K & W resists reimbursing INA by relying on (1) the provisions of 11 U.S.C. § 502(b) and § 506(b); and (2) the language of the Indemnity Agreement between the parties. The Bankruptcy Court accepted both of the arguments advanced by K & W and concluded that INA was not entitled to recover these fees.

The Bankruptcy Court held that, as a matter of bankruptcy law, INA's unsecured claim "should be disallowed insofar as it seeks reimbursement of legal fees and expenses incurred by INA post-petition." INA App. at Doc. 8 (Bankruptcy Court Memorandum of Decision at 5). The provision of the Bankruptcy Code on which the court relied was 11 U.S.C. § 506(b) which states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

This language explicitly permits an *oversecured* creditor to recover interest and certain permitted fees incurred postpetition (if there is an agreement) on an *oversecured* claim. Moreover, case law has reiterated that this interpretation is correct. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-44 (1989). As conceded by the Trustee, § 506(b) is silent on the ability of an *unsecured* creditor (which is INA's status) to recover attorney's fees incurred in prosecuting a postpetition claim.

The Bankruptcy Court found In re Smith, 206 B.R. 113 (Bankr. D. Md. 1997) to be instructive in resolving this issue. In re Smith held that "attorneys' fees for representation of an unsecured creditor incurred subsequent to the filing of the bankruptcy petition are not allowable as a part of the claim in the bankruptcy case." Id. at 115 (citing In re Saunders, 130 B.R. 208, 214 (Bankr. W.D. Va. 1991)). According to the court, "11 U.S.C. § 506(b) demonstrates that Congress intended this result [because] . . . [j]ust as an undersecured creditor cannot include attorney's fees incurred in the representation of the creditor in the bankruptcy case as part of such creditor's claim, the unsecured creditor also has no basis to include in its claim these post-petition charges." Id. (citations omitted). Thus, the Bankruptcy Court held that because INA is an unsecured creditor

7

asserting a claim for legal expenses which were incurred after K & W filed its bankruptcy petition it is precluded from recovering under 18 U.S.C. § 506(b) and In re Smith.

INA disputes this position, arguing that In re Smith and its progeny[1] only preclude an unsecured creditor from recovering a claim for attorney's fees incurred postpetition pursuing a claim *against the debtor*. INA asserts that this case is different because the creditor (INA) is seeking attorney's fees for pursuing a claim against a *third party*, at least partly for the benefit of the Debtor, K & W. However, as pointed out by the Trustee, INA does not offer any support for its position that this Court should construe claims seeking attorney's fees for litigation against the debtor differently than those for attorney's fees incurred when the litigation is against a third party. See INA brief at 23-24; Trustee brief at 12. Indeed, there is no support for this position because, considering the reasoning of In re Smith and its progeny, there is no reasoned basis for concluding that this is a meaningful distinction. Moreover, the Trustee makes a cogent argument, reading the Bankruptcy Code as a whole, regarding why § 506(b) does not treat claims against third parties in a different manner.

The Trustee explains that § 506(b) must be read together with § 502(b), a provision that limits recovery by creditors to the amount due on the petition date. Assuming that the attorney's fees in this dispute were incurred postpetition, § 502(b) precludes these claims. Section 506(b), however, is an exception to the general rule stated in § 502(b). Section 506(b) permits a party to bring a claim for fees, costs, or charges incurred postpetition, *provided that the party bringing the claim is an oversecured creditor*. See Ron Pair, 489 U.S. at 241. There is no dispute that INA, with

---

[1] The cases which are consistent with In re Smith include The Bronze Group, Ltd. v. Sender, 293 B.R. 523, 526 (D. Co. 2003), Pride Companies, L.P. v. Johnson, 285 B.R. 366, 372 (Bankr. N.D. Tex. 2002), and Sakowitz, Inc. v. Chase Bank Int'l, 110 B.R. 268, 272 (Bankr. S.D. Tex. 1989). Extended passages from Bronze Group and Sakowitz are reproduced in the Bankruptcy Court's Memorandum of Decision at page 6.

regard to its claim for attorney's fees, is *unsecured*. Thus, if the Court were to permit INA to recover attorney's fees incurred postpetition, it would have to expand the exception that Congress provided in § 506(b). Because the interpretation of Title 11 "should reflect the interplay between all of its different parts, so that the Bankruptcy Code can operate as a coherent whole[,] [t]he meaning given to any one portion must be consistent with the remaining provisions of the Bankruptcy Code." Finney v. Smith, 141 B.R. 94, 103 (E.D. Va. 1992) (quoting In re Depew, 115 B.R. 965, 969 (Bankr. N.D. Ind. 1989)). INA's position considers § 506(b) in isolation, and therefore does not remain true to this canon of statutory interpretation. Analyzing § 506(b) as an exception to § 502(b), the Bankruptcy Court correctly concluded that postpetition claims for attorney's fees are not allowable to an unsecured, but only to an oversecured, creditor. This Court agrees, and will not expand the application of § 506(b), or add language to this provision of the Bankruptcy Code, to permit an unsecured creditor to recover attorney's fees for litigation if it occurred postpetition.

The fundamental problem with the Trustee's argument, however, is that because the Indemnity Agreement between INA and K & W was entered into *prepetition*, the claim for attorney's fees arising from litigation spawned by that agreement is considered a *prepetition* claim. Thus, § 502(b) and § 506(b) are not triggered. The two underlying premises of the Bankruptcy Court's conclusion that § 506(b) precludes INA's claim are that (1) the claim arose postpetition and (2) INA is an unsecured, rather than an oversecured, creditor. As noted above, this Court agrees with the second premise, but does not agree with the first. INA contends that its right to recover attorney's fees from K & W, the Debtor, originates in the 1981 Indemnity Agreement. K & W's bankruptcy proceeding began in 1988. If the Indemnity Agreement does provide for the payment

9

of attorney's fees to INA for litigation stemming from the Union Station Contract, then that claim should be characterized as "an unliquidated, contingent right to payment *under a prepetition* indemnification agreement executed by the debtor." Hemingway Transport, Inc. v. Kahn, 954 F.2d 1, 8 (1st Cir. 1992) (emphasis added) (citing In re THC Financial Corp., 686 F.2d 799, 802-04 (9th Cir. 1982)). The fact that the "triggering contingency," i.e., actually incurring the attorney's fees, did not occur until after K & W was in bankruptcy does not convert the claim to one brought postpetition. Id.

This reasoning has been applied by other courts in factual circumstances closer to the present situation. For example, the Bankruptcy Court for the Middle District of Florida held that an insurance company's claim for its payment of performance bonds after the debtor filed for bankruptcy was nevertheless a prepetition claim because the agreement obligating the debtor to indemnify the insurance company was entered into before the bankruptcy proceedings began. In Re Wilbur, 237 B.R. 203 (Bankr. M.D. Fla. 1999). Citing to Hemingway Transport, the court in Wilbur agreed that "an indemnification agreement creates a contingent claim as of the date the agreement is signed." Id. at 207; see also In re Highland Group, Inc., 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992) ("Where an indemnification agreement is entered into prior to a bankruptcy filing, such an execution gives the indemnitee a contingent prepetition claim. This is so even where the conduct giving rise to indemnification occurs postpetition.") (citations omitted).

While this proposition—that a prepetition indemnity agreement covering attorney's fees creates a contingent right to those attorney's fees for litigation occurring postpetition—is supported primarily by cases from other circuits, this Court is convinced that the Fourth Circuit would embrace this position. In Stewart Foods v. Broecker, 64 F.3d 141 (4th Cir. 1995), the court considered the

retirement agreement of the former president of Stewart Foods, an entity that filed for bankruptcy subsequent to the signing of the retirement agreement. The retirement agreement provided that Stewart Foods would pay its former president $7,104 per month for 120 months beginning on June 1, 1991. Id. at 143. After making its first nineteen payments under the agreement, Stewart Foods filed for bankruptcy on December 31, 1992. Id. Thereafter, it made no payments to its former president, and he filed a claim for the remaining payments in bankruptcy court. Id. The Fourth Circuit held that the claim for the 101 unpaid monthly installments was a *prepetition* claim notwithstanding the fact that the debtor's failure to pay occurred postpetition. Id. at 144-45.

Although Broecker is factually distinguishable because the former president's claim was for a sum certain, whereas in this case the value of the claim under the Indemnity Agreement could not have been estimated at the time the Debtor filed for bankruptcy, Broecker nevertheless evinces the Fourth Circuit's willingness to embrace the theory that agreements entered into prepetition give rise to prepetition claims even though those claims actually accrue postpetition. Considering these cases, this Court cannot conclude that § 506(b) precludes INA's claim for attorney's fees. Rather, INA's ability to succeed on its claim for attorney's fees rises or falls depending on the interpretation of the Indemnity Agreement. If the Indemnity Agreement requires K & W to pay INA's attorney's fees, then INA's "claim" in the bankruptcy court arose prepetition, and was simply contingent on any future litigation pursuant to the Union Station Contract requiring the payment of attorney's fees.

INA argues that under the Indemnity Agreement,[2] it can recover the expenses incurred in pursuing the Union Station Contract litigation. The relevant language from the Agreement of Indemnity contains three prongs and reads as follows:

> The Principal and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature including, but not limited to, interest, courts costs and counsel fees and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

INA App. at Doc. 1, Ex. A, p.1. INA does not argue that the second prong applies, so the question of whether this Indemnity Agreement provides for the payment of attorney's fees from K & W to INA depends on the interpretation of the first and third prongs. As discussed below, neither prong supports an award of attorney's fees to INA.

INA's argument relating to the first prong is as follows: the Union Station project was one of the bonded projects on which INA acted as K & W's surety; INA's attorney's fees against the District of Columbia would not have arisen but for the execution of these bonds; thus, INA incurred expenses "by reason of having executed or procured execution of the Bonds." INA is correct that the first prong is broad, and encompasses all liabilities and expenses, including attorney's fees, that INA might incur in its role as surety for K & W. As INA points out, this includes any expenses

---

[2] It should be noted that there are many cases cited and many arguments made relating to the question of whether indemnity agreements cover the reimbursement of attorney's fees, and, if so, whether they cover prosecutorial as well as defense actions, see INA's Supp. Authorities Tab 7-11; INA's brief at 15-19. This issue, as evidenced by the fact that the Bankruptcy Court never mentioned it, is a red herring. The applicability of the Indemnity Agreement to INA's claim will rise or fall on an interpretation of the language in the agreement itself, not whether other indemnity agreements in prior cases (with different language) permitted the recovery of attorney's fees.

(litigation-related or not) that it incurred in establishing and discharging its obligations as a surety, such as the expenses that it incurred in negotiating the 1987 agreement with D.C. in settlement of its surety obligations.

Broad, however, does not mean unlimited. The attorney's fees at issue here are not expenses that INA was forced to incur in fulfilling its surety obligations; in this sense, they did not arise "[b]y reason of having executed or procured the execution of the Bonds." Nor are they expenses that INA incurred in seeking indemnification from K & W under the terms of the Indemnity Agreement, which are most reasonably covered not by the first prong, but by the third. Under INA's expansive reading, they would be covered by the first prong because they would never have accrued if INA had never executed the bonds. However, this expansive interpretation of the first prong renders the third prong meaningless. See Orkin v. Jacobson, 274 Md. 124 (1975) (quoting quoting 17 Am. Jur. 2d Contracts § 259 (1964) that it is a "fundamental rule of contract construction" that "[a]n interpretation which gives reasonable meaning to all [of a contract's] provisions will be preferred to one which leaves a portion of the writing useless or inexplicable").

Rather, the attorney's fees that INA now seeks are expenses that INA incurred *after* it had discharged its obligation to D.C. as a surety, and by its own election. As the assignee (to the extent of its performance as a surety) of K & W's claims against D.C. for breach of contract, INA was entitled to join in the D.C. CAB Case, and it chose to do so. But these expenses are not "[b]y reason of having executed or procured the execution of the Bonds" in the plain reading of those words; they are expenses incurred in a separate action that INA chose to pursue against a third party to recoup what it had paid.

13

Other courts have construed similar contract language to include attorney's fees, but only when those fees are "reasonable and necessary expenses incurred by the surety in good faith in defending itself against a suit on a bond." Jackson v. Hollowell, 685 F.2d 961, 965 (5th Cir. 1982). The court in Jackson considered a set of surety agreements with language at least as broad as those in the instant case; for example, one contained an obligation "to indemnify the [surety] company against any loss, damage or expense of any kind incurred by it by reason of the execution of . . . [the] bond." Id. at 964 n.11 (alterations in the original). However, the Jackson court refused to automatically extend the "by reason" language to attorney's fees that the surety incurred when it chose to retain its own counsel (in addition to the principal's) in a suit by the obligee; rather, it held that the fees would only be covered by the indemnity clause if it could show that they were "reasonably necessary" to protect the surety's interests against the obligee's claims. Id. at 966. Here, INA had no need at all to incur these attorney's fees in order to defend its interests regarding its liability as a surety; those interests had already been determined, by INA's own negotiations leading to the D.C. Agreement, at the time the attorney's fees at issue in this case were incurred.

Thus, INA's argument that it can recover the attorney's fees under the first prong must fail, and the only clause that could possibly enable it to recover is the third prong. This clause references any and all "covenants and conditions" located throughout the Indemnity Agreement, thus requiring consideration of the entire document. The third prong states that K & W "shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for loses and/or expenses of whatsoever kind or nature including . . . court costs and counsel fees from and against any and all such losses and/or expenses which the Surety may sustain and incur . . . (3) In enforcing any of the covenants and conditions of this Agreement." INA App. at Doc. 1, Ex. A, p. 1. INA

14

points to two specific covenants and conditions of the Agreement that it argues encompass the attorney's fees incurred in the prosecution of the Union Station Contract litigation. These two provisions are the "Assignment" and "Settlements" paragraphs of the Indemnity Agreement.

The "Assignment" paragraph provides, in relevant part, that K & W assigns to the Surety, as collateral, "(a) all the rights of the Principal in and growing in any manner out of all contracts. . . and (e) . . . any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds." INA App. at Doc. 1, Ex. A, p.1. INA argues that it should recover attorney's fees under this condition of the Agreement because it incurred the litigation costs by "enforc[ing] the assignment to INA of K & W's rights against the District pursuant to its rights under the 'Assignment' paragraph of the Indemnity Agreement." INA brief at 20.

INA's argument is unavailing because the litigation against D.C., prosecuted by INA, cannot be characterized as "enforcing" the Assignment paragraph of the Indemnity Agreement. First, and of greatest importance, INA's attorney expenses were incurred in litigation against D.C., for recovery under the 1987 D.C. Agreement. There is no relationship between K & W's obligations under this paragraph of the Indemnity Agreement and an action against a third party to recover under a separate contract. The enforcement of the obligations under this paragraph would encompass an INA claim against K & W, not against D.C. Second, this paragraph is only triggered if one of six enumerated events occurs. INA App. at Doc. 1, Ex. A, p. 1. Only the first event, providing that K & W would assign its rights in the event of "any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds," id., even arguably applies to this case. However, this provision, when considering the entire paragraph, is triggered only if it is *K & W that breaches a contract*, an act that indisputably did not occur in this case. Thus, INA did not incur

"court costs and counsel fees" by enforcing the Assignments paragraph of the Indemnity Agreement and it is therefore unable to recover those expenditure from K & W under this theory.

INA alternatively contends that it incurred attorney's fees enforcing the "Settlements" paragraph of the Indemnity Agreement. The "Settlements" paragraph states, in relevant part, that "[t]he Surety shall have the right to . . . settle or compromise any claim . . . unless the Principal . . . shall request the Surety to litigate such claim or demand . . . and shall deposit with the Surety at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered . . . with interest, costs, expenses and attorneys' fees, including those of the Surety." Id. INA contends that because K & W "demanded that INA appeal the default termination of K & W," INA brief at 21, this clause is applicable.

INA's argument must be rejected for two reasons. First, the record does not indicate that INA was going to settle the claim against D.C. but for the objection of K & W.[3] Thus, the statement that "the Principal (K & W) objected to INA settling the claims and demanded that INA appeal the default termination[,]" id., is not accurate. Both INA and K & W wanted to pursue the contract termination litigation against D.C. Second, there is no dispute that K & W never deposited with INA any amount of cash or collateral as required by this provision. More telling is the fact that INA never (until now) requested such collateral or cash which, according to this paragraph, should have been deposited "at the time of such request." The fact that no funds were deposited as required by the "Settlements" paragraph is further evidence that this clause is inapplicable.

---

[3] In its Reply brief INA states that "[t]he Trustee does not deny that K & W objected to INA settling the claims and demanded that INA appeal the default termination of K & W as well as the District's demand against INA's Performance Bond." INA Reply at 13. The record, however, does not indicate that INA had decided to settle the case, and changed its mind only at the urging of K & W. If INA, without any prompting from K & W, made the decision to litigate this dispute, this settlement provision is clearly not triggered. The record suggests that this latter scenario was the more likely situation.

Finally, INA advances a few alternative arguments for achieving its goal of obtaining attorney's fees, all of which the Court concludes are without merit. First, INA argues that the course of dealings between the parties, memorialized by the various agreements, evinces the Trustee's belief that INA would be entitled to an unsecured claim for legal fees incurred during the Union Station Contract litigation. According to INA, because the Trustee has consistently taken this position, he should be judicially estopped from taking the contrary position at this stage of the proceedings. The doctrine of judicial estoppel precludes a party from asserting a factual position in one proceeding and then maintaining an inconsistent position in a second proceeding. This equitable doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)). "The purpose of the doctrine is to prevent a party from playing 'fast and loose' with the courts, and to protect the essential integrity of the judicial process." John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 29 (4th Cir. 1995) (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). This Court concludes that the integrity of the judicial process is not impugned in any manner by the Trustee's current position contending that INA is not entitled to attorney's fees.

Considering the relevant Agreements, this Court cannot agree with INA that the Trustee took the position that INA was entitled to attorney's fees. Looking at the various Agreements as a whole, they are, at best, inconclusive and ambiguous with respect to the recovery of attorney's fees. INA points to the 1989 Bankruptcy Agreement, INA App. at Doc. 1, Ex. B, p.6-7, which states, in relevant part, that

> [t]he Trustee recognizes and agrees that . . . INA has an ownership interest
> in any and all funds recovered from the D.C. Government as a result of a

> judgment or settlement of the Union Station Claims, up to and including . . . that aggregate amount of all reasonable fees, costs and expenses incurred by INA in connection with the preparation and prosecution of the Union Station Claims, and/or the Union Station Project generally, and interest thereon.

Id. But if INA's right to be reimbursed for attorney's fees derives from the Indemnity Agreement signed in 1981, then the omission of any reference to that agreement in the 1989 Bankruptcy Agreement is curious. Moreover, the Tripartite Agreement, INA App. at Doc. 2, Ex. C, p.6, provides that "INA agrees that it has no claim to any sum recovered by the Trustee from the D.C. Government, whether by judgment or settlement, in connection with the Trustee's Quantum claim in the D.C. CAB Case, except as an unsecured creditor in Kora & Williams Corporation's bankruptcy case." Id. There was no mention of INA's ability to recovery attorney's fees. Also, as part of the Tripartite Agreement, the Trustee agreed to pay Watt, Tieder a 25% contingency fee, suggesting that the parties agreed on other fee arrangements.[4] Moreover, in the 2001 Agreement the payment of $4,591,893 from the Trustee to INA was "in full and final satisfaction of INA's Ownership Claim." INA App. at Doc. 2, Ex. D, p.2. This seems to negate INA's claim, ostensibly made very clear in the 1989 Bankruptcy Agreement, that it has an "ownership interest" in the recovery of attorney's fees. While it is at least arguable that the Tripartite and 2001 Agreements do not *unambiguously* deny the recovery of attorney's fees, it is certainly far from clear that through these agreements the Trustee "took the position" that INA could recover attorney's fees. Thus, this Court is unable to conclude that the Trustee was "playing fast and loose" with the judicial system, such that he should be estopped from resisting payment of attorney's fees to INA.

---

[4] It is once again curious that an agreement focused solely on payments to attorneys did not have a provision stating that the Trustee would reimburse INA for its substantial payments to Watt, Tieder.

INA's next attempt to receive payment for attorney's fees brings the Court back to an interpretation of the bankruptcy code. INA argues that the Debtor should be required to pay INA's attorney's fees under the administrative expenses provisions of Title 11. The Bankruptcy Court correctly concluded that INA could not rely on 11 U.S.C. § 503(b)(3)(D) because this bankruptcy case is not proceeding under Chapter 11. The Bankruptcy Court did not, however, consider INA's argument that 11 U.S.C. § 503(b)(1)(A) applied to its claim for administrative expense. 11 U.S.C. § 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . . the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." Because INA incurred most of the postpetition litigation expenses regarding the Union Station Contract litigation, it argues that it expended the necessary costs to preserve the estate, and thus it should be given an administrative priority claim pursuant to section 503(b)(1)(A). This Court cannot accept this argument.

"The granting of administrative priority under § 503(b)(1)(A) of Title 11 should only be granted under extraordinary circumstances, to wit, when the parties seeking priority have sustained their burden of demonstrating that their services are actual and necessary to preserve the estate." First Brandon Nat'l Bank v. Kerwin-White, 109 B.R. 626, 633 (D. Vt. 1990) (quoting In re AMFESCO Induc., Inc., 81 B.R. 777, 785 (Bankr. E.D.N.Y. 1988)). In First Brandon, the court concluded that the creditor did not meet its burden of showing that its appraisal costs of the Debtor's land were administrative expenses. Id. The court explained that, "[a]t best First Brandon has shown that the appraisal costs incurred were necessary to preserve its own interest in the estate." Id. In this case, INA has similarly failed to meet its burden. Just as in First Brandon, this Court finds that

19

INA's attorney's fees were not incurred to preserve the estate, but rather "to preserve its own interest in the estate." Id.[5]

## CONCLUSION

For the aforementioned reasons, the order of the Bankruptcy Court Granting the Trustee's Motion for Partial Summary Judgment, Denying INA's Motion for Partial Summary Judgment, and disallowing INA's claim insofar as it seek reimbursement of legal fees and expenses (including, but not limited to, attorney's fees and expenses, expert witness fees and expenses, consultant fees and expenses, deposition expenses and court costs) incurred by INA after May 16, 1988 for prosecuting the appeal of the default termination of Kora & Williams on the Union Station Contract, will, by separate order, be Affirmed. Additionally, INA's Motion to Add Supplemental Authorities will, by separate order, be Granted.

|  |  |
|---|---|
| 9/29/05 | /s/ |
| Date | ROGER W. TITUS |
|  | UNITED STATES DISTRICT JUDGE |

---

[5] The Court also notes that attorney's fees are not included as "typically allowed administrative expenses." In re Highland Group, 136 B.R. at 480. Highland Group included "compensation and reimbursement of expenses awarded to court-appointed officers of the estate; expenses other than professional compensation incurred by a creditor filing an involuntary petition; expenses incurred by a creditor who recovers property which is beneficial to the estate; expenses of a creditor who has acted in connection with a criminal prosecution related to the case; expenses of various types of creditors who have made a substantial contribution to a reorganization or municipal debt adjustment case, or by a superseded custodian." Id. (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 355 (1977), 1978 U.S. Code Cong. & Admin. News 5787).